VICTORIA HOSPITAL, INC. *v.* STATE DEPARTMENT OF HEALTH

SUPERIOR COURT        HARTFORD COUNTY        FILE No. 139034

Memorandum filed March 23, 1965

*Thomas H. Corrigan,* of Hartford, for the plaintiff.

*Harold M. Mulvey,* attorney general, *Robert L. Hirtle, Jr., F. Michael Ahern* and *Carl D. Eisenman,* assistant attorneys general, for the defendant.

SHAPIRO, J. The plaintiff corporation has a license from the defendant to conduct and operate a nursing home for chronic and convalescent care at 21 Victoria Road in Hartford, Connecticut. On April 7, 1964, the defendant issued a license for thirty beds to the plaintiff, following the action on June 10, 1963, reducing the number to that. The plaintiff believes it is entitled to a license for forty-five patients, claims to be aggrieved by the defendant's action, and has therefore appealed to this court. In argument, plaintiff stated it was proceeding under § 19-35 of the General Statutes.

Included in the General Statutes, chapter 333, "State Department of Health," is § 19-36, permitting this department to "adopt, amend, promulgate and enforce such regulations based upon reasonable standards of health, safety and comfort with respect to each classification of institutions to be licensed under sections 19-32 to 19-42, inclusive, . . . as will further the accomplishment of the purposes of said sections in promoting safe, humane and adequate care and treatment of individuals in institutions." Pursuant to this, the defendant adopted a public health code, of which the pertinent part is regulation 200-III-(C), "Chronic and convalescent nursing

homes." See Conn. Dept. Regs. § 19-13-D8. Among the many sections therein is "5. Nursing Service." Conn. Dept. Regs. § 19-13-D8 (e). This provides that "a. There shall be a competent licensed nurse-in-charge who shall be responsible for nursing care of patients, for adequate staffing of the institution . . . . b. For an institution of thirty beds or over, the nurse-in-charge shall be a nurse registered in Connecticut. For an institution of under thirty beds, the nurse-in-charge may be a practical nurse licensed in Connecticut. c. There shall be at least one nurse registered in Connecticut or one practical nurse licensed in Connecticut, on duty, in uniform, at all times. Additional registered nurses or licensed practical nurses shall be provided as necessary; at no time shall there be less than one registered nurse or licensed practical nurse for every thirty patients or fraction thereof, from 7 a.m. to 3 p.m., and one registered nurse or licensed practical nurse for every forty-five patients, or fraction thereof from 3 p.m. to 11 p.m. . . . . d. The charge nurse shall cover the 7 a.m. to 3 p.m. shift. . . ."

The evidence discloses that at one time a license was issued to the plaintiff for forty-five beds. Thereafter, on a number of occasions, the defendant, through its inspections (General Statutes § 19-38), found that the code was violated by the plaintiff. On August 9, 1962, the inspection disclosed inadequate licensed nursing coverage and also aide coverage; on August 31, 1962, the plaintiff was short a registered nurse for thirty patients or over and an extra registered nurse or licensed practical nurse to comply with the regulations; on October 11, 1962, on duty were Mrs. Anne L. Diana, president of the plaintiff corporation; a licensed practical nurse; and another licensed practical nurse. There were thirty-five patients, and this required a registered

nurse as the charge nurse. On December 2, 1962, it was found that Mrs. Diana was the only nurse on duty for thirty-five patients. On February 5, 1963, a letter was sent Mrs. Diana regarding the violations. On June 10, 1963, the plaintiff's license was reduced to thirty beds because of inadequate personnel. On June 24, 1963, the plaintiff was still operating as "Victoria Hospital, Inc.," in telephone and information directories and as shown by signs on the premises. A letter to Mrs. Diana advised her to discontinue this practice and to designate the place as a chronic and convalescent or nursing home. On January 31, 1964 an inspection revealed thirty-seven patients; on March 9, 1964, an inspection indicated thirty-eight patients; and on August 24, 1964, an inspection revealed thirty-seven patients.

Section 19-40 of the General Statutes provides for an appeal to this court by any licensee who is aggrieved by any decision of the state department of health after a hearing. The court may affirm, modify or reverse the decision of said department. After the number of patients had been ordered reduced to thirty, the plaintiff's attorney, who is also counsel in this case, had requested a meeting on June 5, 1964, with the commissioner of health, Franklin Foote. Also present were Dr. Hooper, chief of the hospitals section under the commissioner; Miss Kennedy, who acts as a consultant and inspector of convalescent homes under Dr. Hooper; Mrs. Diana; and her lawyer, Attorney Corrigan. A discussion was held concerning the plaintiff's situation. The commissioner intended to use a tape recorder in order to record the discussions and conduct this as a hearing. Corrigan requested that this be an informal meeting, and so no record was kept of the discussions. For about a year the plaintiff had been limited to thirty patients, and the

plaintiff really attempted to get an increase to forty-five patients which was not granted.

In its complaint, the plaintiff says it is aggrieved by the defendant's action and seeks to have this court direct the defendant to restore its licensed capacity to forty-five beds. The defendant is an administrative agency. To render a decision, it must weigh evidence and reach conclusions. *Adam* v. *Connecticut Medical Examining Board,* 137 Conn. 535, 537. The function of the court is to determine whether or not the defendant acted illegally, arbitrarily or in abuse of its discretion. *Lanyon* v. *Administrator,* 139 Conn. 20, 28.

The evidence also discloses that on various occasions the failure to provide adequate nursing care was brought to the plaintiff's attention. This was turned over to Corrigan. Instead of correcting the situation and complying with the law, the plaintiff persisted in its conduct. It seems strange indeed that the plaintiff, through Mrs. Diana, should feel it has a grievance against the defendant. Its license was never revoked or suspended, although it might well have been under § 19-37 of the General Statutes. The plaintiff's actions and conduct through Mrs. Diana lead to the impression that she seems indifferent to the fact that she has human beings under her charge and not so many cases of goods. When it is realized that in plaintiff's care are patients who are senile, those with cerebral disease or accident, and patients with heart or diabetic disease, or just old age incapacity, it becomes alarmingly clear as to why the nursing care requirement must be adhered to. Section 19-36 requires the adoption, promulgation and enforcement of such regulations as will further the accomplishment of the purposes of §§ 19-32 through 19-42 in promoting safe, humane and adequate care of individuals.

These regulations must be observed in the performance and not in the breach. It would create an intolerable situation if these requirements were not carefully complied with. The plaintiff can obtain a license for forty-five beds. All it has to do is to guide itself by the code requirements. It cannot cut corners and it cannot gamble with human beings.

The court finds that the plaintiff is not aggrieved by the defendant's action. Accordingly, the appeal is dismissed and judgment may enter for the defendant.